IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-01174-MSK-MJW

DAMARIS VELEZ,

Plaintiff,

v.

WALKMED INFUSION,

Defendant.

---

## REPORT AND RECOMMENDATION ON DEFENDANT WALKMED INFUSION, LLC'S MOTION TO DISMISS COMPLAINT (Docket No. 5)

---

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

Defendant WalkMed Infusion, LLC ("WalkMed") moved under Federal Rule of

Civil Procedure 12(b)(6) to dismiss Plaintiff's Complaint, and District Judge Marcia S.

Krieger referred the motion to the undersigned (Docket No. 8).  Plaintiff, who proceeds

in this matter pro se[1], filed a response (Docket No. 14) and Defendant filed a reply

---

[1]  A federal court must construe a pro se plaintiff's "pleadings liberally, applying a less stringent standard than is applicable to pleadings filed by lawyers. [The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (quotations and citations omitted). The Tenth Circuit interpreted this rule to mean, "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, this interpretation is qualified in that it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Id.*; *see also Peterson v. Shanks*, 149 F.3d 1140, 1143

(Docket No 16).  On February 1, 2016, pursuant to Fed. R. Civ. P. 12(d), the Court

converted the Rule 12 motion into a motion for summary judgment brought pursuant to

Fed. R. Civ. P. 56 and allowed the parties to submit additional materials.  (Docket No.

22.)  Defendant filed a Supplement Regarding Summary Judgment (Docket No. 23) and

Plaintiff filed her Supplemental Materials in Response to Minute Order for Motion to

Dismiss Complaint (Docket No. 24).  The Court has reviewed the parties' filings.  The

Court has further taken judicial notice of the Court's entire file in this case and

considered the applicable Federal Rules of Civil Procedure, statutes, and case law.

Now being fully informed, the Court recommends that the motion be granted.

## Jurisdiction

The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## Allegations

Plaintiff, Damaris Velez filed a Complaint (Docket No. 1) that does not itself

contain factual allegations.  Instead, she relies on the various attachments to the

Complaint, specifically: (1) the Equal Employment Opportunity Commission "EEOC"

Intake Questionnaire completed by Plaintiff; (2) the U.S. Equal Employment Opportunity

Commission Dismissal and Notice of Rights; (3) the Dismissal of Charge sent to Plaintiff

by the EEOC on March 2, 2015; (4) the Hearing Officer's Decision dated May 13, 2015

sent to Plaintiff by the Division of Unemployment Insurance of the Colorado Department

of Labor and Employment; (6) an Annual Performance Review for the period July 15,

2013 through December 20, 2013; (7) a November 21, 2014 document titled "Employee

---

(10th Cir. 1998) (citing *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)).

2

Corrective Action;" (8) a November 24, 2014 document titled "Addendum A - Anti-Harassment Claim Form, Written Complaint Form;" (9) a document titled "Positive Description," which appears to be a description of the responsibilities of a Quality Assurance Specialist employed by Defendant; (10) a November 10, 2014 email; (11) a November 21, 2014 email; (12) an October 6, 2014 email; (13) a December 9, 2014 document titled "Employee Corrective Action;" and (14) a January 22, 2015 document titled "Employee Corrective Action."  In the Complaint, Plaintiff refers to each of these documents under the heading "First Claim For Relief and Supporting Factual Allegations."  (Docket No. 1 at 3).  In short, Plaintiff brings a Title VII, 42 U.S.C. § 2000e-5, *et seq.*, claim against Defendant based on her sex and age.  (Docket No. 1 at 2.)  Plaintiff alleges that she was unlawfully discharged from her employment and paid less than others.  (*Id.*)  Plaintiff also alleges that she was harassed and retaliated against.  (*Id.*)

## Standard of Review

As Chief Judge Krieger has explained:

> Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Substantive law governs which facts are material and what issues must be determined. It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof, and identifies the party with the burden of proof. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kaiser Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual dispute is genuine and summary judgment is precluded if the evidence presented in support of and opposition to the

motion is so contradictory that, if presented at trial, a judgment could enter for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence. *See* Fed. R. Civ. P. 56(c)(1)(A). Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute. *See Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999); *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). If there is a genuine dispute as to a material fact, a trial is required. If there is no genuine dispute as to any material fact, no trial is required and the court enters judgment.

If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove. If the respondent comes forward with sufficient competent evidence to establish a prima facie claim or defense, a trial is required. If the respondent fails to produce sufficient competent evidence to establish its claim or defense, then the movant is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

*Lenox Maclaren Surgical Corp. v. Medtronic, Inc.*, No. 10-cv-02139-MSK-BNB, 2015

WL 7774187, at *4-5 (D. Colo. Dec. 3, 2015).

### The Motion

In the motion, Defendant argues that Plaintiff's gender discrimination claims fails

because Plaintiff provides no evidence that Plaintiff was treated differently than male

employees.  (Docket No. 23 at 6).  Defendant further argues that Plaintiff's claim of

gender discrimination fails because Plaintiff does not offer evidence that she was

treated less favorably than others not in her protected class.  (*Id.* at 7.)  With regard to

Plaintiff's argument that she was paid less than her colleagues, Defendant maintains

that this claim fails as a matter of law because the only male co-workers Plaintiff points

4

to in support of her claim had a different title and, therefore, did not perform substantially equal work.  (*Id.* at 8.)  With regard to Plaintiff's retaliation claim, Defendant argues: (1) it is time-barred because it was filed 91 days after Plaintiff received her right-to-sue letter from the EEOC[2] and (2) Plaintiff did not engage in protected activity.  (*Id.* at 8-9.)  Defendant also argues that Plaintiff's age discrimination claim fails because there is no evidence that Plaintiff was treated less favorably then a younger employee.  (*Id.* at 9-10.)  Finally, with regard to Plaintiff's claims, Defendant argues that Plaintiff was fired because she was not qualified for her job.  (*Id.* at 7-10.)

Plaintiff's filings generally revisit the documents attached to her Complaint.  For example, Plaintiff argues that a performance evaluation "reveals that Plaintiff was performing the duties required by a Quality Specialist."  (Docket No. 14 at 2.)  Plaintiff further states that "the Unemployment Hearing Officer's Decision [ ] revealed Plaintiff was not at fault for her separation and that the case was based on [h]earsay."  (*Id.*)  The Court notes that to the extent Plaintiff offers factual allegations in her response or supplement, the Court cannot consider such unsworn factual allegations when considering the motion.  *See* Fed. R. Civ. P. 56(c)(4).

---

[2]  The Court notes that the law requires an individual to file a lawsuit within 90 days of *receipt* of a right-to-sue letter from the EEOC, not within 90 days of the date the letter was mailed by the EEOC.  42 U.S.C. § 2000e-5(f)(1); *Hernandez v. Valley View Hosp. Ass'n*, 684 F.3d 950, 961 (10th Cir. 2012) ("Title VII requires a plaintiff claiming employment discrimination to file a complaint within 90 days of receipt of a right-to-sue letter from the EEOC.").  Given that it is unlikely that Plaintiff received the letter from the EEOC on the date it was mailed by the EEOC, the Court does not address this argument as part of its analysis of the motion.

**Material Undisputed Facts**

The parties do not dispute the facts in this case, they simply disagree about whether those facts establish or support Plaintiff's claims.  Based on the Court's review of the parties' filings, it finds the following to be material undisputed facts:

- Defendant hired Plaintiff on June 15, 2013 as a Quality Specialist.  (Docket No. 1-1 at 1.)

- Plaintiff's first Performance Review (for the period July 15, 2013 through December 20, 2013) was completed by Suzane Hardin.  (*Id.* at 13.)

- This Performance Review reflected that Plaintiff needed improvement in several areas.  (*Id.* at 13-16.)

- On November 21, 2014, Sally Leonard, Plaintiff's new supervisor, completed a written warning regarding Plaintiff's job performance.  (*Id.* at 19-21.)

- Plaintiff disagreed with the written warning and felt that she was being targeted by her new supervisor.  (*Id.* at 20-21.)

- On November 24, 2014, Plaintiff filed an Anti-Harassment Claim Form relating to the November 21, 2014 written warning.  (*Id.* at 22.)

- On the Anti-Harassment Claim Form Plaintiff stated that during the week of November 10, 2014 she asked Sally Leonard about "the possibility of taking FMLA" leave.  Plaintiff further notes that she was "written up" on November 21, 2014.  (*Id.*)

- In an attachment to the Anti-Harassment Claim Form Plaintiff includes "[e]xamples of comments made by Sally" that she found "harsh."  (*Id.* at 24-25.)

6

- Plaintiff received another written warning on December 9, 2014 that listed deficiencies in her job performance.  (*Id.* at 32-34.)

- Plaintiff received another written warning on January 22, 2015 that listed deficiencies in her job performance.  (*Id.* at 35-37.)

- On January 13, 2015, Plaintiff filed an Intake Questionnaire with the EEOC.  (*Id.* at 1-1.)

- On March 5, 2015, the EEOC dismissed Plaintiff's charge and issued a right-to-sue letter to Plaintiff.  (*Id.* at 5-6.)

- On May 13, 2015, a Hearing Officer from the Division of Unemployment Insurance of the Colorado Department of Labor and Employment issued a decision regarding Plaintiff's appeal of the denial of Plaintiff's request to receive unemployment insurance benefits.  (*Id.* at 7-12.)

- The Hearing Officer concluded that Defendant "discharged [Plaintiff] because [Plaintiff] was not meeting the expectations of her job."  (*Id.* at 7.)

- The Hearing Officer found that Plaintiff should be award unemployment benefits because Plaintiff's job had changed as a result of a restructuring and Plaintiff was unable to perform her job as required after the restructuring.  (*Id.* at 10.)

- Plaintiff was terminated from her position with Defendant on January 22, 2015.  (*Id.* at 7.)

## Analysis

### *Title VII*

Under Title VII, an employer may not discriminate on the basis of race, color, religion, sex, or national origin, or take adverse action against an employee who has engaged in protected conduct. *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012); *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 998 (10th Cir. 2011).

<u>Discrimination - Sex</u>

Because Plaintiff does not allege any direct evidence of discrimination, her Title VII claims are analyzed under the burden-shifting framework enumerated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Crowe v. ADT Sec. Servs. Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011). A plaintiff bears the initial burden to establish a prima facie case for discrimination. *Id.* Once a prima facie case is established, the burden shifts to the defendant to provide a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* If the defendant does so, the burden returns to the plaintiff to demonstrate that the defendant's proffered reason is pretextual. *Id.* To establish a prima facie case under Title VII, a plaintiff must provide evidence that: (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position she held; and (4) she was treated less favorably than others who are not members of the protected class, giving rise to an inference of discrimination. *Khalik*, 671 F.3d at 1192. The significance of the fourth element for claims under Title VII is that there is evidence that the termination occurred under circumstances that would support an inference of discrimination. *See Adamson v. Multi Community Diversified Servs.*, Inc., 514 F.3d 1136, 1146, 1151 (10th Cir. 2008).

8

Defendant does not dispute that Plaintiff is a member of a protected class or that she suffered an adverse employment action.  With regard to Plaintiff's Title VII gender discrimination claim, Defendant maintains that "there is no evidence that similarly situated male employees were treated differently."  (Docket No. 23 at 7.)  Defendant makes a similar argument to the extent Plaintiff makes an age discrimination claim.  (*Id.* at 10.)  On her EEOC Intake Questionnaire Plaintiff lists two individuals on the portion of the form that asks "Of the persons in the same or similar situation as you, who was treated *better* than you?"  (Docket No. 1-1 at 2) (emphasis in original.)  Candice Hudson and Jason Mingilton are both listed as Senior Quality Specialists.  On the form Plaintiff wrote:

> I was told since Jason is a male, had an older girlfriend which he had to take out on dates, he would go for more money if offered a job at WalkMed. Jason was hired as the Senior Quality Specialist.

(*Id.*)  Notably, Plaintiff does not allege that she applied for this position or that Mr. Mingilton was promoted over her from a similar position. The next portion of the form asked Plaintiff to list similarly situated persons who were treated worse than her.  (*Id.* at 3.)  Plaintiff again listed Candice Hudson and noted: "Candice was demoted for poor performance."  (*Id.*)  In the next portion of the form, Plaintiff listed Candice Hudson as a similarly situated person who was treated the same as Plaintiff.  (*Id.*)

As noted above, Plaintiff has the burden of establishing a prima facie case. Plaintiff's references to Ms. Hudson confuse the issues.  Further, to the extent Plaintiff brings a claim based on her gender, Ms. Hudson is also female and, therefore, cannot

9

be used to show "she was treated less favorably than others who are not members of the protected class." *Khalik*, 671 F.3d at 1192.  With regard to Mr. Mingilton, he is listed as a Senior Quality Specialist, not a Quality Specialist.  (Docket No. 1-1 at 2.)  "Similarly situated employees are those who deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline." *Aramburu v. The Boeing Company*, 112 F.3d 1398, 1404 (10th Cir. 1997) (citation omitted).  Plaintiff offers no argument or evidence that these positions are substantially similar, that she and Mr. Mingilton had the same supervisor, or that, as a result, Mr. Mingilton was a similarly situated male employee.  Plaintiff attaches the job description regarding her position as a Quality Specialist, but no information about the job performed by Mr. Mingilton.  (Docket No. 1-1 at 26-27.)  Therefore, the Court must conclude that Plaintiff has not established this element.  *See Brainard v. City of Topeka*, 597 F.App'x 974, 979 (10th Cir. 2015) (affirming district court's conclusion that plaintiff failed to show that male employee was similarly situated when he had the same title but different responsibilities and more experience).  As a result, the Court finds that Defendant is entitled to summary judgment with regard to Plaintiff's Title VII discrimination claim based on her gender.

<u>Hostile Work Environment</u>

To the extent Plaintiff alleges that her supervisor, Susan Leonard, continuously critiqued her work, she does not meet the standard for showing a hostile work environment.  "[A] plaintiff must show that the environment was both objectively and subjectively hostile or abusive." *Morris v. City of Colo. Springs*, 666 F.3d 654, 664 (10th Cir. 2012) (citation omitted).  As the Tenth Circuit summarized, the Court must

10

assess "the objective severity of the harassment from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *Harsco Corp. v. Renner*, 475 F.3d 1179, 1187 (10th Cir. 2007) (emphasis added). In other words, we must look to a "totality of the circumstances," and "consider[ ] such factors as 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Chavez v. New Mexico*, 397 F.3d 826, 832-33 (10th Cir. 2005) (quoting *O'Shea v. Yellow Tech. Servs., Inc.*, 185 F.3d 1093, 1098 (10th Cir. 1999)); *accord Billings v. Town of Grafton*, 515 F.3d 39, 48 (1st Cir. 2008). "[T]hat [objective] inquiry requires careful consideration of the social context in which particular behavior occurs and is experienced by its target." *Oncale*, 523 U.S. at 81, 118 S.Ct. 998. "Conduct which is considered normal and appropriate in one setting may be deemed abusive or hostile in another." *EEOC v. Fairbrook Med. Clinic, PA*, 609 F.3d 320, 328 (4th Cir. 2010).

*Morris*, 666 F.3d at 664.

Plaintiff states that she felt "[a]ttacked and [h]umiliated" when she met with Ms. Leonard on November 21, 2014.  (Docket No. 1-1 at 24.)  She provides examples of statements made by Ms. Leonard, but none of those statements reflects discrimination. For example, the statements "You have been socializing in the back" and "I'm tired of your excuses, you are constantly making excuses" may have come across as attacks, but they are about job performance, not race, age, or sex.  The only statement that relates to a protected status is the statement "Ariana is closing all the complaints. Did you ask her for advice[?] [S]he is young, fresh and comes with [a] new set of eyes[.] " (*Id.* at 25.)  However, this one statement would not allow a jury to conclude that Plaintiff was subject to a hostile work environment.  It is not physically threatening or humiliating.  *Chavez*, 397 F.3d at 832-33.  There is no evidence that this statement interfered with Plaintiff's work performance or that it was made frequently.  *Id.*  As a

result, Plaintiff has failed to show that she was subjected to a hostile work environment

and Defendant is entitled to summary judgment on this claim.

Retaliation

Title VII also makes it unlawful for an employer to retaliate against an employee

"because [s]he has opposed any practice made an unlawful employment practice by

this subchapter." 42 U.S.C. § 2000e-3(a).

> A plaintiff can [ ] establish retaliation either by directly showing that
> retaliation played a motivating part in the employment decision, or
> indirectly by relying on the three-part *McDonnell Douglas* framework. *See
> Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987 (10th Cir. 2011). To
> state a prima facie case for retaliation under Title VII, a plaintiff must show
> "(1) that [s]he engaged in protected opposition to discrimination, (2) that a
> reasonable employee would have found the challenged action materially
> adverse, and (3) that a causal connection existed between the protected
> activity and the materially adverse action." *Id.* at 998 (internal quotation
> marks omitted) (alteration in original).

*Khalik*, 671 F.3d at 1192-93.  A plaintiff establishes a causal connection between her

protected conduct and the adverse employment action by proffering "evidence of

circumstances that justify an inference of retaliatory motive, such as protected conduct

closely followed by adverse action." *MacKenzie v. City & Cty. of Denver*, 414 F.3d 1266,

1279 (10th Cir. 2005) (internal quotation marks omitted).  Although evidence of "very

close[ ]" temporal proximity will provide compelling evidence of retaliation, and, in some

cases, may be sufficient on its own, *Piercy v. Maketa*, 480 F.3d 1192, 1198 (10th Cir.

2007), a plaintiff must also show that the person who engaged in the adverse

employment action was aware of the protected activity, *Clark Cty. Sch. Dist. v. Breeden*,

532 U.S. 268, 273 (2001) (per curiam) (noting that some cases "accept mere temporal

proximity between an employer's knowledge of protected activity and an adverse

12

employment action as sufficient evidence of causality to establish a prima facie case"
(emphasis added)); *Petersen v. Utah Dep't of Corr.*, 301 F.3d 1182, 1188 (10th Cir.
2002) ("An employer's action against an employee cannot be because of that
employee's protected opposition unless the employer knows the employee has engaged
in protected opposition.").

Once the plaintiff successfully asserts a prima facie retaliation case, the burden
shifts to the defendant (i.e., employer) to "come forward with a legitimate, . . .
non-retaliatory rationale for the adverse employment action. If the defendant does so,
the plaintiff must show that the defendant's proffered rationale is pretextual." *Crowe v.
ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1195 (10th Cir. 2011).  Stated otherwise, (1) if
the plaintiff discharges her initial burden by making an adequate prima facie case, (2)
the defendant must shoulder the burden of rebutting it by justifying on legitimate
grounds the employment action at issue; and (3) the final onus is on the plaintiff to
show—by a preponderance of the evidence—that the defendant's explanation is a
pretext intended to conceal an impermissible retaliatory motive.  *See Estate of Bassatt
v. Scho. Dist. No. 1 in the City and Cnty. of Denver*, 775 F.3d 1233, 1238 (10th Cir.
2014).  "Pretext can be inferred from evidence revealing 'weaknesses, implausibilities,
inconsistencies, incoherencies, or contradictions' in the employer's explanation . . . ."
*Macon v. United Parcel Serv., Inc.*, 743 F.3d 708, 714 (10th Cir. 2014) (quoting *Morgan
v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997)).  It may also be alleged "by providing
direct evidence discrediting the proffered rationale, or by showing that the plaintiff was

treated differently from others similarly situated." *Jaramillo v. Adams Cty. Sch. Dist. 14*, 680 F.3d 1267, 1269 (10th Cir. 2012).   The critical question regarding this aspect of the *McDonnell Douglas* rubric is whether "a reasonable factfinder could rationally find [the employer's rationale] unworthy of credence and hence infer that the employer did not act for the asserted [non-retaliatory] reasons." *Crowe*, 649 F.3d at 1196 (quoting *Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1167 (10th Cir. 2007)).

On her EEOC Intake Questionnaire, Plaintiff states: "I believe the company does not want to pay me the money that [sic] have been paying to others doing the same work as me. When I asked about an increase, that's when the nitpicking started. The amount of complaints was off the roof, me taking a leave of absence during this time was not what the company needed." (Docket No. 1-1 at 2.)   Elsewhere on this form Plaintiff states that on October 3, 2014 she "inquired about the cost of living increase." She also notes that "During the week of the 14th [of November 2014], my daughter was in a 72-hour mental hold. I inquired about FMLA, a week later I got written up."   Plaintiff provides a Anti-Harassment Claim Form she submitted to Defendant on November 24, 2014, which states that Plaintiff asked her supervisor, Sally Leonard, about "the possibility of taking FMLA" because her daughter was having mental health problems. (Docket No. 1-1 at 22.)   Inquiring about a cost of living adjustment to her pay is not protected opposition to discrimination.   With regard to Plaintiff's inquiry regarding taking FMLA leave, the Court need not determine if Plaintiff has shown a prima facie case because Defendant offers a legitimate reason for terminating Plaintiff and Plaintiff fails to show that this reason is pretextual.   *Lounds v. Lincare, Inc.*, — F.3d —, 2015 WL

9299074, at *24-25 (10th Cir. Dec. 22, 2015).  In short, Defendant maintains that

Plaintiff "was not able to fulfill the basic duties of her job."  (Docket No. 23 at 8.)

Plaintiff's first performance review (for the period July 15, 2013 through

December 20, 2013) reflects that she needed improvement in several areas including

completing her work accurately and on time.  (Docket No. 1-1 at 13.)  She also was

informed that she needed to improve her ability to solve problems and work with

teammates.  (*Id.* at 13-14.)  This review was completed in 2013 by her first supervisor,

Suzane Hardin, not the supervisor Plaintiff alleges she spoke to in 2014 about FMLA

leave.  Ultimately, as the Hearing Officer concluded, Plaintiff was terminated because

she "was not performing her job in accordance with [Defendant's] job performance

standards."  (Docket No. 1-1 at 10.)  Plaintiff also includes her November 21, 2014 and

December 9, 2014 written warnings completed by her supervisor, Sally Leonard.

(Docket No. 1-1 at 19-21, 32-34.)  In addition, Plaintiff provides a January 22, 2015

written warning.  (Docket No. 1-1 at 35-37.)  Each of these documents reflects that

Plaintiff was told that she was making too many errors.  For example, the January 22,

2015 written warning states:

> [Plaintiff] has maintained responsibility for only the complaints area. I have
> been unable to assign additional duties because of her sluggish pace in
> this area. Additionally, the lack of critical thinking and inability to adapt to
> the increased pace and expectation level prevent [Plaintiff] from being
> able to competently complete the necessary volume of work. The high
> level of errors and the repeated feedback loops needed to obtain an error-
> free record from [Plaintiff] also impacts other teammates who review her
> work, creating an unwarranted drain on departmental efficiency.
>
> . . .

15

> On 09 January 2015 at our one-on-one meeting I reminded [Plaintiff] of the expectation of an error rate of less than 10%, and told her that she must improve because the rate remained unacceptably high. I asked her for her plan for meeting this expectation, and she said that she would be giving each record a second review before turning them in to me. However, the records turned in immediately after this date still had an error rate of approximately 50%.

(Docket No. 1-1 at 36.)  The records demonstrating Plaintiff's poor performance support Defendant's argument that Plaintiff was terminated because she was unable to fulfill the duties of her job.  In response, Plaintiff has not provided evidence of "such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions" in Defendant's proffered reason "that a reasonable factfinder could rationally find [it] unworthy of credence."  *Green v. New Mexico*, 420 F.3d 1189, 1196 (10th Cir. 2005) (quotation omitted) (upholding summary judgment on Title VII claim where plaintiff failed to provide evidence supporting claims of pretext).

While the Hearing Officer found that Plaintiff's job had changed as the company was restructured, a restructuring that leads to termination of an employee does not lead to an inference of a discriminatory purpose.  *See Vinez v. Sky Chefs, Inc.*, No. 14-cv-00223-PAB-KMT, 2015 WL 4607651, at *13 (D. Colo. Aug. 3, 2015) ("Given the fact that Sky Chefs was undergoing a corporate restructuring, the circumstances of this case do not lend themselves to that inference and would not allow a reasonable factfinder to infer that Sky Chefs is dissembling to cover up a discriminatory purpose.").  To the extent Plaintiff argues that she was not provided with training and was instead "targeted for failure," (Docket No. 14 at 1), the Court cannot credit this bald, conclusory statement. *Khalik*, 671 F.3d at 1193; *see also Bennett v. Windstream Comms., Inc.*, 792 F.3d 1261, at 1268 (10th Cir. 2015) ("[S]he has not identified evidence showing that other

technicians—of any age or gender—received training opportunities she was not

offered."). Further, Plaintiff's factual allegations included in her response and

supplement, as discussed above, are not proper evidence that can be considered by

the Court when considering the motion. Fed. R. Civ. P. 56(c)(4). The Supreme Court

has held that, "[i]n appropriate circumstances, the trier of fact can reasonably infer from

the falsity of the explanation that the employer is dissembling to cover up a

discriminatory purpose." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133,

147 (2000). However, here Plaintiff's first performance review completed by her first

supervisor indicated that she was lacking in the areas that her later reviews and

warnings focused on. As a result, the Court does not find that it is appropriate to infer

that Defendant is attempting to cover up a discriminatory purpose. To the contrary, it

appears that Plaintiff struggled in her role at the company and, as that position changed,

her struggles increased. For these reasons, the Court concludes that Defendant is

entitled to summary judgment with regard to Plaintiff's hostile work environment claim.

***Equal Pay Act***

It is unclear if Plaintiff is attempting to bring a claim under the Equal Pay Act

("EPA"). (Docket No. 1-1 at 2) ("I believe the company does not want to pay me the

money that [sic] have been paying to others doing the same work as I am."). However,

to the extent Plaintiff does bring such a claim, Defendant argues that Plaintiff "cannot

identify a male employee who was paid more to perform substantially equal work."

(Docket No. 23 at 8.) "To establish a prima facie case of pay discrimination under the

EPA, a plaintiff must demonstrate that: (1) she was performing work which was substantially equal to that of the male employees considering the skills, duties, supervision, effort and responsibilities of the jobs; (2) the conditions where the work was performed were basically the same; [and] (3) the male employees were paid more under such circumstances." *Riser v. QEP Energy*, 776 F.3d 1191, 1195-96 (10th Cir. 2015) (internal quotation and citation omitted).  As discussed above with regard to Plaintiff's Title VII gender discrimination claim, Plaintiff fails to show that a male colleague who was performing substantially equal work was being paid more than she was.  As a result, to the extent Plaintiff is bringing a claim under the EPA, the Court concludes that Defendant is entitled to summary judgment with regard to Plaintiff's EPA claim.

### Age Discrimination in Employment Act

On her EEOC Intake Questionnaire Plaintiff checked the box for "age" as a basis for her employment discrimination claim.  (Docket No. 1-1 at 2.)  Under the ADEA, "[i]t shall be unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1).  For the Plaintiff to prevail on an ADEA claim, she must show: (1) she is a member of the class protected by the statute; (2) she suffered an adverse employment action; (3) she was qualified for the position at issue; and (4) she was treated less favorably than others not in the protected class. *Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 531 (10th Cir. 1998).  To ultimately succeed on such a claim, Plaintiff "must prove by a preponderance of the evidence . . . that age was the 'but for' cause of the

18

challenged employer decision." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176

(2009).  The analysis of an age discrimination claim is essentially the same as a sex

discrimination claim.  *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1216 (10th Cir.

2002) (applying *McDonnell Douglas* to Title VII and the Age Discrimination in

Employment Act).  Plaintiff's ADEA claim fails for the same reason that Plaintiff' sex

discrimination claim fails.  Plaintiff offers no information about the ages of any of her

colleagues and offers no facts to support a prima facie case of age discrimination.  As a

result, she has not shown that she was paid less than her younger colleagues

performing the same job.  As a result, the Court concludes that Defendant is entitled to

summary judgment with regard to Plaintiff's ADEA claim.

### Recommendation

For the foregoing reasons, the undersigned RECOMMENDS that:

1.     Defendant WalkMed Infusion, LLC's Motion to Dismiss Complaint, which

was converted to a Rule 56 motion, be GRANTED;

2.     Judgment enter in favor of Defendant and against Plaintiff; and

3.     Defendant be awarded its costs to be taxed by the Clerk of Court pursuant

to Federal Rule of Civil Procedure 54(d)(1) and Local Civil Rule 54.1.

**NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case.  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  The District Judge need not consider frivolous, conclusive, or general objections.  A party's failure to file and serve such written, specific objections waives de novo review of the recommendation by the District Judge, <u>Thomas v. Arn</u>, 474 U.S. 140, 148-53**

**(1985), and also waives appellate review of both factual and legal questions,**
<u>**Makin v. Colo. Dep't of Corr.**</u>**, 183 F.3d 1205, 1210 (10th Cir. 1999);** <u>**Talley v. Hesse**</u>**,**
**91 F.3d 1411, 1412-13 (10th Cir. 1996)**.


Dated: February 25, 2016                    */s/ Michael J. Watanabe*
           Denver, Colorado             Michael J. Watanabe
                                United States Magistrate Judge